J^THOMAS F. DALEY, Judge.
Appellee, Dr. Edward Faget Pitard, appeals the trial court’s judgment interpreting a Matrimonial Agreement in favor of his ex-wife, Jan Hursey Pitard. He contends that the trial court erroneously held that the income and investments from Dr. Pitard’s medical practice were community property, where the language of the Matrimonial Agreement executed by the parties and supporting extrinsic evidence clearly establish that all interests in Dr. Pitard’s medical practice would remain his separate property. Ms. Pitard filed a Motion to Strike portions of Dr. Pitard’s appellate brief, specifically the parts quoting the extrinsic evidence, arguing that the same was not introduced into evidence at trial and was previously excluded by the trial court (when argued in a post-trial memorandum) on the same basis. She also answers the appeal, arguing that the judgment regarding the amount of reimbursement due to her is too low and should be increased.
J^MATRIMONIAL AGREEMENT
The parties were married on April 8, 1989, and entered into a Matrimonial Agreement eight days before they were married. Both parties filed Petitions for Divorce: Ms. Pitard on February 23, 1995, and Dr. Pitard on June 12, 1995. The divorce was granted on November 6, 1995. In connection with the Petition to Partition the Community of Acquets and Gains, Ms. Pitard also filed a Petition to Rescind the Matrimonial Agreement, or in the alternative, to find that the assets and investments derived from Dr. Pitard’s income from his medical practice should be deemed community assets.
The trial court appointed a Special Master, Bruce Miller, to review the claims and assertions of the parties along with all pertinent documents and submissions. His findings maintained the validity of the agreement, but questioned that portion of the agreement that addressed the income earned by Dr. Pitard from his medical practice and that he subsequently used for investments. Dr. Pitard objected to that *994 portion of the special master’s findings, and the matter came for trial on February 23, 2000.
LAW AND ANALYSIS
The following codal provisions apply to this case:
Art. 2328. Contractual regime; matrimonial agreement
A matrimonial agreement is a contract establishing a regime of separation of property or modifying or terminating the legal regime. Spouses are free to establish by matrimonial agreement a regime of separation of property or modify the legal regime as provided by law. The provisions of the legal regime that have not been excluded or modified by agreement retain their force and effect.
Art. 2338. Community property
The community property comprises: property acquired during the existence of the legal regime through the effort, skill, or industry of Neither spouse; property acquired with community things or with community and separate things, unless classified as separate property under Article 2341; property donated to the spouses jointly; natural and civil fruits of community property; damages awarded for loss or injury to a thing belonging to the community; and all other property not classified by law as separate property.
General rules of contract interpretation apply to matrimonial agreements. The Agreement reads, in pertinent part:
1.
The community of acquets and gains ordinarily provided for by Louisiana law to subsist between married persons shall not exist between Appearers with respect to Edward Faget Pitard’s medical practice, whether incorporated or unincorporated, now or in the future.
Without limitation of foregoing objective, but in furtherance of such objective, the parties stipulate and agree that:
2.
All interest in Edward Faget Pi-tard’s medical practice including but not limited to tangible and intangible assets, accounts receivable, equipment, investments and goodwill shall constitute Edward Faget Pitard’s separate and paraphernal property and all increases in value arising therefrom shall also be considered and remain Edward Faget Pitard’s separate property. Further, any property acquired in the future in connection with Edward Faget Pitard’s medical practice shall constitute his separate property. If Edward Faget Pitard’s medical practice shall be evidenced now or in the future by a partnership interest or by stock in a professional medical corporation, such partnership interest or stock shall remain his separate property, even if such interest is transformed into other interests.
3.
Notwithstanding the provisions of Paragraph 2, if Edward Faget Pitard’s medical practice is incorporated, any salary payments made to him by such professional medical corporation shall constitute community property. However, any contributions by Edward Fag-et Pitard or by a professional medical corporation or medical partnership to a qualified retirement plan shall constitute Edward Faget Pitard’s separate property and the retirement benefits provided under such retirement plan or plans shall constitute his separate property with no obligation whatsoever to reimburse the community.

*995
Jé-

Jan Marie Hursey specifically waives and renounces any claim for reimbursement under Louisiana Civil Code arts. 2364 and 2366 for the use of any community funds which may be used for the benefit of Edward Faget Pitard’s separate property as provided above and she waives and renounces any claim under Louisiana Civil Code article 2368 for any increase in value of Edward Faget Pi-tard’s separate property as provided above.
5.
In all other respects, the community of acquets and gains shall apply between Appearers.
The Special Master, Mr. Miller testified at trial. Mr. Miller interpreted the agreement to not encompass Dr. Pitard’s income from the medical practice, thus making it community property. He distinguished “income” from “assets and investments” as used in the Agreement. The Agreement did not use the term “income” in terms of the medical practice. Miller opined that income is a by-product of the medical practice, its assets and investments, not an asset of the practice per se, and thus was not reserved by the Agreement as Dr. Pitard’s separate property, the way assets and investments of that practice specifically were reserved.
Miller further interpreted this agreement to mean that if this income, which was community property, were invested by Dr. Pitard in investments “related to the practice of medicine,” such as a building for the location of the medical practice, equipment for the practice, or similar, then these investments would be Dr. Pitard’s separate property. But if the income were invested in stocks or securities unrelated to the practice of medicine, such as, for example, AT & T stock, the investments would be community property under the agreement. Mr. Miller’s interpretation heavily depended on what use Dr. Pitard made of the income (net revenue) of the practice, after accounts receivable (clearly an asset of the practice) were collected and used to Dpay obligations of the practice such as expenses and liabilities. The net revenue Mr. Miller classified as income, which he found was not specifically reserved in the matrimonial agreement as Dr. Pitard’s separate property, unless this income were then used to invest directly in the practice, as described above. If the income was not so used, Mr. Miller found that it constituted community property.
Mr. Miller testified that separate property can yield fruits that are community property, unless the paraphernality of the separate property and all its fruits and revenues are specifically reserved as separate property. This is how he classified the income of the medical practice, since the Matrimonial Agreement did not use the word income and did not reserve the income of the practice as Dr. Pitard’s separate property. Miller opined that there was a difference between the practice itself and the income it produced, the practice itself being specifically reserved as Dr. Pitard’s separate property, and the income not specifically reserved in the Matrimonial Agreement.
Mr. Miller did not base his opinion of the character of the practice’s income on the parties’ income tax filing. Dr. and Mrs. Pitard filed joint income tax returns for the years in question. The tax return has no place to designate whether a spouse’s income is community or separate.
Lisa Wright, a Certified Public Accountant qualified as an expert witness, testified that income is not an asset. An asset, she said, is something that the entity owns, and listed cash, buildings, and fixed assets as examples. Income is the excess of the revenues over expenses, she testified. In *996 come is either distributed, flows through to the owners, or is reinvested into the business for the continuing operations of the business. Ms. Wright testified that the income was Dr. Pitard’s. He practiced as a sole proprietor, and there was no separate, distinct income-earning entity called |7“the sole proprietorship.” She explained that “sole proprietor” is a term used to describe an individual who is not incorporated. She testified that Dr. Pitard and his medical practice were not two different beings, because he practiced as a sole proprietor. As a sole proprietor, he was the owner of the medical practice, its assets and liabilities.
Wright determined the value of the community and the amount of reimbursement due to each party. She conducted an analysis of the parties’ accounts and the activity therein.
Charles Theriot testified as an expert Certified Public Accountant. He was asked to analyze the parties’ various accounts in existence during the marriage in order to trace transactions to determine if they were separate or community in nature. He also looked at the Matrimonial Agreement and the use of the term “investments” and the phrase “assets of the medical practice” to determine how those items might interplay with the analysis of the transactions. He concluded that Dr. Pitard’s obligation was to remit $109,000.00 to Ms. Pitard. His conclusion rested on the assumption that the investment accounts previously described were assets of Dr. Pitard’s medical practice and not community property. His assumption that the investments were Dr. Pitard’s separate property rested on a sentence in paragraph number 2 of the agreement: “Any property acquired in the future in connection with Edward F. Pitard’s medical practice shall constitute his separate property.” Theriot was of the opinion that the brokerage and investment accounts were separate property because they were established with income from the practice.
Jan Hursey testified that it was her impression that Dr. Pitard wished to enter into this agreement so that in the event his medical practice purchased a large asset like a building, it would not be subject to a community property claim if they ever Isdivorced. She testified that his boss at the time, Dr. Applewhite, was particularly concerned because she had known of another medical practice whose building was subject to a community property claim by the spouse of a doctor, and that she wished the practice’s assets to be protected from such potential claims.
Dr. Pitard argues that paragraph 3 of the Agreement supports his position that his salary from the sole proprietorship was his separate property. This paragraph declares that if Dr. Pitard incorporated his medical practice, any salary he received from the corporation would be community property. Dr. Pitard argues that the meaning of this paragraph was that his salary as a sole proprietor would be his separate property. The trial court disagreed. As noted by Ms. Wright, the expert accountant who testified, when a person practices as a sole proprietor, there is no separate business entity from the person, as there is in the case when a corporation is formed.
We find that the evidence supports the court’s judgment that Dr. Pitard’s income as a sole proprietor was not specifically reserved by the terms of the Matrimonial Agreement. The pertinent language is found in Paragraph 2: “All interest in Edward Faget Pitard’s medical practice including but not limited to tangible and intangible assets, accounts receivable, equipment, investments and goodwill shall constitute Edward Faget Pitard’s separate and paraphernal property ...” The Agreement does not address Dr. Pitard’s income. *997 Because it was not addressed, it was not included in the separate property reservation.
REIMBURSEMENT
Jan Pitard argues that the trial court should increase the amount of reimbursement due to her. She notes two specific items: half of $40,000.00 in cash | flthat Dr. Pitard removed from a community account in early 1995 to pay for his drug rehabilitation, and other funds Ms. Pitard claims were removed from a community account in 1998 that Dr. Pitard placed in his charitable remainder trust.
We deny the reimbursement claim for the funds that Dr. Pitard used for drug rehabilitation. Dr. Pitard testified that this expenditure was necessary to preserve his medical license and thus his medical practice. This court accepts that these funds were spent for the direct benefit of Dr. Pitard’s medical practice. By the terms of the Agreement, Ms. Pitard waives her reimbursement claim for any community funds that are spent on Dr. Pitard’s medical practice. Further, in January of 1995, when these funds were removed from the community account, the community was still in existence. It is logical to conclude that at the time, the drug rehabilitation also had the potential to benefit the community, though ultimately the parties divorced.
The issue of the funds that were placed into the charitable remainder trust is troublesome. The briefs on this issue were not helpful. Ms. Pitard claims that a certain amount of funds were removed from the Prudential Bache account in 1998 by Dr. Pitard and placed into an account deemed to be his separate property. On the final judgment of the trial court, this Prudential Account was given a value in the partition. It is unclear to this court whether this value included these contested funds. The parties’ briefs are very unclear and the parties were unable to enlighten this court at oral argument. Given these factors, Ms. Pitard has presented this court with insufficient grounds to disturb the amount of reimbursement that the trial court ordered in her favor.
Accordingly, for the reasons above, we affirm the judgment of the trial court.
AFFIRMED.